## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-CV-10007-KING

JILL DIAMOND,

      Plaintiff,

vs.

HOSPICE OF FLORIDA KEYS, INC.,

      Defendant.

_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** comes before the Court upon Defendant HOSPICE OF THE

FLORIDA KEYS, INC.'s ("Hospice") Motion for Summary Judgment and Supporting

Memorandum of Law (the "Motion") (DE 9), filed August 17, 2015.[1] The Court heard

oral argument on the Motion on October 20, 2015, in Key West, Florida.

### BACKGROUND[2]

Plaintiff Jill Diamond's two-count Complaint (DE 1-2) alleges that her former

employer, Defendant Hospice, interfered with her rights and benefits under the Family

Medical Leave Act, 29 U.S.C. § 2601, *et seq.* ("FMLA" or the "Act"), and terminated her

---

[1] The Court has additionally considered Defendant's Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment (DE 10), Plaintiff's Statement of Material Disputed Facts (DE 17), Plaintiff's Response and Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment (DE 18), and Defendant's Reply in in Support of its Motion for Summary Judgment (DE 22).

[2] The following facts are undisputed.

employment in retaliation for exercising those rights in violation of the FMLA. Hospice has moved for summary judgment on both counts.

Hospice is a provider of at-home healthcare services for residents and visitors of Monroe County diagnosed with serious or terminal illnesses. Diamond was employed by Hospice from November of 2011 through May 4, 2014. In November of 2012, Diamond informed Hospice that she would require leave time to care for her father, who had been diagnosed with a serious illness. Diamond began taking FMLA leave in June of 2013. Through the termination of her employment with Hospice approximately eighteen months later, every single one of Diamond's requests for FMLA leave was approved. Indeed, Plaintiff requested and was approved for FMLA leave for the periods of: June 24, 2013 through July 16, 2013; October 21, 2013 through October 22, 2013; December 23, 2013 through December 27, 2013; January 13, 2014 through January 14, 2014; January 31, 2014; February 3, 2014 through February 4, 2014; February 24 through February 25, 2014; February 26, 2014; March 21, 2014; March 24-25, 2014; April 2, 2014 through April 4, 2014; April 7, 2014; and April 14, 2014 through April 18, 2014.

Beginning in August of 2013, Diamond periodically received "standard" memoranda from the Human Resources department notifying her when her balance of paid leave time, referred to as her Paid Time Off ("PTO") balance, fell below a certain threshold.[3] The PTO memoranda do not contain any mention of FMLA leave. Diamond

_____

[3] The standard PTO memoranda were issued to employees whenever their PTO balance fell below sixteen hours.

received a PTO memorandum on August 7, 2013, August 20, 2013, November 11, 2013, December 26, 2013, and January 13, 2014.

On the form approving Diamond's requested FMLA leave for February 24 and 25, 2014, Hospice's Human Resources department noted "employee will not have sufficient PTO to cover time requested." Nonetheless, the leave was approved and Diamond took leave on those days. However, as a result of its apprehension that this warning could be construed as a caution or threat against an employee exercising her FMLA rights, Hospice's Human Resources department discontinued issuing these types of warnings on leave approval forms.

With respect to the FMLA leave Diamond took on March 21, 24, and 25, 2015, there was some confusion as to whether this leave was pre-approved FMLA leave or emergency FMLA leave that was only approved after-the-fact. As a result, upon Diamond's return from this leave, Hospice sent Diamond a memorandum, dated March 28, 2014, which demanded that Diamond provide Hospice with proof of need to establish that the leave taken "beginning on Friday, March 21, 2014" was bona fide FMLA leave. In a follow-up email, dated April 8, 2014, Hospice renewed its request for proof of need during the aforementioned period, and stated,

> Your continued unpaid time away from the workplace compromises the quality of care we are able to provide as an organization. We understand that family emergencies arise and time away is occasionally necessary. FMLA is designed to help you with that, but there are requirements for approval of FMLA without notice. The documentation we have requested to certify your time away starting March 21, 2014 is necessary.

Diamond produced proof of need and the leave was retroactively approved, as is common practice for FMLA leave taken without prior notice.

On April 14, 2014, when she appeared at work on a day that she had been pre-approved for FMLA leave, Diamond was "chastis[ed to the effect] that showing up when she was scheduled to be on FML[A leave] was disruptive to [Hospice's] organization."

On April 29, 2014, Hospice was subjected to a survey by the State of Florida. Hospice's survey guidelines dictate that no employee shall "leave[] the office [during the survey] without checking with the Clinical Director." Diamond left the office during the survey without checking with the Clinical Director.

On May 5, 2014, Diamond's employment with Hospice was terminated. The memorandum informing Diamond of her termination cites, *inter alia*, the following deficiencies: only four of Diamond's seven patients had "social work care plans in the HCMS system[;]" Diamond failed to enter her notes following a financial assessment for a patient transfer to a skilled nursing facility; two of Diamond's patients had "not had social work contact since March and contact is required to be notated every two weeks[;]" Diamond left the office during a state survey "without prior notification and coordinating with her supervisor[;]" and Diamond failed to fulfill her obligation to coordinate a Bereavement Support Group during the four months preceding her termination.

## LEGAL STANDARD

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers or other materials; or showing that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Id.* at 56(c)(1). "In determining whether summary judgment is appropriate, the facts and inferences from the facts are viewed in the light most favorable to the non-moving party, and the burden is placed on the moving party to establish both the absence of a genuine material fact and that it is entitled to judgment as a matter of law." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

In opposing a motion for summary judgment, the non-moving party may not rely solely on the pleadings, but must show by affidavits, depositions, answers to interrogatories, and admissions that specific facts exist demonstrating a genuine issue for trial. *See* Fed. R. Civ. P. 56(c), (e); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Further, the existence of a "scintilla" of evidence in support of the non-movant's position is insufficient; there must be evidence on which the jury could reasonably find for the non-movant. *Andersen v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Likewise, a court need not permit a case to go to a jury when the inferences that are drawn from the evidence, and upon which the non-movant relies, are "implausible." *Matsushita*, 475 U.S. at 592-94; *Mize v. Jefferson City Bd. Of Educ.*, 93 F.3d 739, 743

(11th Cir. 1996).

At the summary judgment stage, the judge's function is not to "weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. In making this determination, the Court must decide which issues are material. A material fact is one that might affect the outcome of the case. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* The Court must also determine whether the dispute about a material fact is indeed genuine, that is, "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see, e.g., Marine Coatings of Ala., Inc. v. United States*, 932 F.2d 1370, 1375 (11th Cir. 1991).

## DISCUSSION

Hospice moves for summary judgment on Diamond's claims for interference and retaliatory termination under the FMLA. In support of its motion, Hospice argues that it approved every single request Diamond made for leave under the FMLA, such that Diamond cannot show Hospice interfered with the exercise of her rights under the Act, and that Hospice had legitimate, non-retaliatory reasons for her termination, which Diamond has not shown were pretextual. In response, Diamond argues that she has established genuine issues of material fact that 1) Hospice discouraged her from exercising her rights under the FMLA and 2) Hospice terminated her after becoming increasingly frustrated with her intermittent exercise of her rights under the FMLA.

**Count I – FMLA Interference Claim**

"In order to protect an eligible employee's right to take FMLA leave, the Act allows, among other things, for an employee to bring a private cause of action for interference." *Seguin v. Marion Cnty. Health Dept.*, No. 13-00096, 2014 WL 3955162, at *9 (M.D. Fla. Aug. 13, 2014) (Hodges, J.). "To prove FMLA interference, an employee must demonstrate that he was denied a benefit to which he was entitled under the FMLA." *Martin v. Brevard Cnty. Pub. Sch.*, 543 F.3d 1261, 1266-67 (11th Cir. 2008). "Interfering with the exercise of an employee's rights would include, for example, not only refusing to authorize FMLA leave, but discouraging an employee from using such leave." 29 C.F.R. §825.220. However, "[t]o bring a successful FMLA interference claim, a plaintiff must be able to show that she suffered some sort of prejudice as a result of the interference." *Seguin*, 2014 WL 3955162, at *10.

Indeed, in *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81 (2002), the Supreme Court explained that the FMLA's enforcement provision,

> provides no relief unless the employee has been prejudiced by the violation: The employer is liable only for compensation and benefits lost "by reason of the violation," § 2617(a)(1)(A)(i)(I), for other monetary losses sustained "as a direct result of the violation," § 2617(a)(1)(A)(i)(II), and for "appropriate equitable relief, including employment, reinstatement, and promotion, § 2617(a)(1)(B). The remedy is tailored to the harm suffered.

*Id.* at 89.

Diamond urges the Court to find that the following facts preclude the entry of summary judgment on her claim that Hospice interfered with the exercise of her FMLA rights: i) several statements made by Hospice could be interpreted as discouraging her

from exercising her FMLA rights, ii) she appeared at work on a day for which she had been approved for leave, and iii) she claims she would have taken additional leave in April of 2014 had she not felt that Hospice was discouraging her from exercising her rights.

The statements that Diamond complains of are that she was warned several times that she was running low on paid time off (which is depleted concurrently with any FMLA leave taken), she was asked on at least one occasion to provide receipts as proof of need for FMLA leave requests which were made without thirty days prior notice, and, in conjunction with the proof of need request, she was warned "if you were working for anyone else, you would be out of a job." Additionally, Diamond claims that she appeared at work on a day for which she was approved to take FMLA leave, and that she declined to take some FMLA leave during April of 2014 which she otherwise would have, because of her apprehension that Hospice was growing frustrated with her intermittent FMLA leave requests.

As it is undisputed that her FMLA leave requests were always approved, Diamond is unable to show that any statements by Hospice which she might have perceived as discouraging her from exercising her rights under the FMLA resulted in any actual prejudice to her. Moreover, Diamond's unsupported statement that she would have taken more leave during April of 2014 had she not perceived that Hospice was discouraging her from exercising her FMLA rights is insufficient to create an issue of material fact. Indeed, Diamond has failed to present any evidence which might suggest that she was ever coerced to refrain from submitting a leave request. Accordingly, she is unable to

show that she suffered any prejudice as a result of any alleged interference, and Hospice is entitled to summary judgment on Count I.

## Count II – FMLA Retaliatory Termination Claim

A successful FMLA retaliation claim requires plaintiffs to demonstrate that their employer intentionally discriminated against them for exercising their rights under the Act. *Martin*, 543 F.3d at 1267. This demonstration can be made through either direct or circumstantial evidence. "Only the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor constitute direct evidence of discrimination[,]" while any statement which suggests, "but does not prove, a discriminatory motive . . . is considered circumstantial evidence." *Dixon v. Hallmark Cos. Inc.*, 627 F.3d 849, 854 (11th Cir. 2010); *Akouri v. Fla. Dep't of Transp.*, 408 F.3d 1338, 1347 (11th Cir. 2005).

Where, as here, a plaintiff presents no direct evidence of discrimination,[4] courts apply the familiar burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the *McDonnell Douglas* framework, the plaintiff bears an initial burden of establishing a *prima facie* case of retaliation. *See Holland v. Gee*, 677 F.3d 1047, 1055 (11th Cir. 2012). To establish a prima facie case of retaliation, a plaintiff must show that: i) she engaged in a statutorily protected activity; ii) she suffered an adverse employment action; and iii) the action was causally related to the protected activity. *Martin*, 543 F.3d at 1268. Should the plaintiff meet her burden, the

---

[4] Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment fails to cite to any materials in the record which could be construed as direct evidence of discrimination.

burden of production then shifts to the employer to proffer a legitimate, non-retaliatory reason for its adverse employment action. *See Holland*, 677 F.3d at 1055. If the employer meets this burden, the burden shifts back to the plaintiff to demonstrate that the proffered reason was not the true reason for the action. *See id.*

It is undisputed that Diamond exercised her right to take leave under the Act, i.e., she engaged in a statutorily protected activity, and that she was terminated from her employment with Hospice, i.e., she suffered an adverse employment action. Additionally, it is undisputed that Diamond was terminated within one month of engaging in statutorily protected activities, and the Court finds that the close temporal proximity between the adverse employment action and her exercise of her FMLA rights is sufficient to establish the final prong of Diamond's prima facie case for retaliatory termination. However, the Court also finds that Hospice's proffered reasons for Diamond's termination satisfy its obligation to demonstrate it had legitimate, non-retaliatory reasons for the adverse employment action at issue. Thus, the Court must turn to whether Diamond has demonstrated that Hospice's proffered reasons were mere pretext.

To show pretext, Diamond must present evidence demonstrating "weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in [Hospice]'s proffered legitimate reasons for its actions [such] that a reasonable factfinder could find them unworthy of credence." *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 771 (11th Cir. 2005). This evidence must meet Hospice's proffered reasons "head on and rebut [them] . . . [;]" speculation and conclusory allegations and assertions of retaliation are insufficient.

*Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000); *see Bryant v. Jones*, 575 F.3d 1281, 1308 (11th Cir. 2009).

Diamond has failed to meet head on and dispute many of Hospice's proffered reasons for her termination, and instead relies on her speculation that the true reason for her termination was her exercise of her FMLA rights. However, "[s]peculation does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." *Cordoba v. Dillard's Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) (quoting *Hedberg v. Ind. Bell. Tel. Co.*, 47 F.3d 928, 931-32 (7th Cir. 1995)). Due to Diamond's failure to show that Hospice's proffered reasons for her termination were pretextual, Hospice is entitled to summary judgment on Count II.

## CONCLUSION

Therefore, it is **ORDERED, ADJUDGED,** and **DECREED** that Defendant HOSPICE OF FLORIDA KEYS INC.'s Motion for Summary Judgment **(DE 9)** be, and the same is, hereby **GRANTED**.

**DONE AND ORDERED** in Chambers at the James Lawrence King Federal Justice Building and United States Courthouse, in Miami, Miami-Dade County, Florida, this 30th day of November, 2015.

JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE

**Cc:    All counsel of record**

11